RIOGRANDE 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN








NO. 03-94-00221-CV








Rio Grande Savings & Loan Association, In Liquidation, Appellant




v.




Larry Myers and Lorraine Myers, Appellees








FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT


NO. 470,853, HONORABLE ROBERT C. WRIGHT, JUDGE PRESIDING







 Appellant Rio Grande Savings & Loan Association ("Rio Grande") was an
uninsured savings and loan institution that was placed into liquidation. Appellees Larry and
Lorraine Myers were depositors and debtors of Rio Grande and brought suit under the Texas
Savings and Loan Act, Tex. Rev. Civ. Stat. Ann. art. 852a (West Supp. 1995) (the "S & L Act"),
to challenge the liquidating agent's decision on their deposit accounts and indebtedness. The
district court held that the Myerses were entitled to have their loan reduced through a dollar-for-dollar setoff against their savings accounts. Rio Grande appeals, alleging that the Myerses' claim
was not presented timely for judicial review. We will reverse the trial court


judgment and render judgment that the cause be dismissed for want of jurisdiction.



BACKGROUND


 Rio Grande was a state-chartered institution located in Harlingen, Texas. On May
12, 1987, Rio Grande was placed under conservatorship and its deposit accounts were frozen. 
Subsequently, Rio Grande was placed into liquidation, and a liquidating agent was appointed
under section 8.09 of the S & L Act to collect assets and distribute funds to the failed institution's
creditors.

 Rio Grande was the only uninsured savings and loan in Texas at the time of its
liquidation. Rio Grande had more than 6,000 depositors who had approximately $78 million on
deposit. On April 28, 1988, the date of Rio Grande's closing, the Myerses' deposits totaled
almost $250,000, and consisted of a certificate of deposit with a face amount of $200,000 and
another savings account. Approximately a year before Rio Grande's closing, the Myerses had
obtained a $50,000 three-month loan, secured by their certificate of deposit. This loan became
due on July 15, 1987, two months after Rio Grande was placed into conservatorship.

 The liquidating agent sent the Myerses a claim form together with current deposit
data and instructions to complete the form. The claim form that the Myerses submitted, dated
May 19, 1988, identified them as depositors with one account number and one certificate of
deposit number, totalling a claim amount of $248,235.45. (1) The claim form further listed the
Myerses' $50,000 loan secured by their certificate of deposit and stated that the loan was "to be
paid in full when certificate has matured and paid in full."

 The liquidating agent sent the Myerses a Notice of Claim Approval dated August
18, 1988, which provided:



 Your claim against Rio Grande Savings has been reviewed and is hereby
approved in the amount of $248,235.45 subject to possible offset against any loan
or debt you owe Rio Grande. Your claim in this amount and in the name below
has been approved and entered into a claim register maintained by Rio Grande as
part of its liquidation proceeding. As an approved claimant and borrower or
debtor of Rio Grande, your pro-rata share of any funds ultimately distributed may
be used to pay any loan or debt in a manner consistent with any contract you may
have with Rio Grande, with any residual proceeds being delivered to you. You will
be advised of any specific plan to offset or distribute funds by separate letter.


 You have a right to appeal my decision to the Travis County District Court
within three (3) months from the date stated above [08-18-88]. Please consult your
lawyer if you wish to appeal this decision relating to your claim.


 Please keep this certificate as a record of the approval of your claim in the
stated terms and amount.



(Emphasis added.)

 The liquidating agent next communicated with the Myerses by a February 2, 1989
letter which informed them that a sixteen percent distribution had been declared (sixteen percent
of $248,235.45 or $39,717.67), and that their share was being applied to their delinquent loan
balance (then $58,968.75). Sometime in March, Mr. Myers called the liquidating agent and
expressed his disagreement with the liquidating agent's action. The liquidating agent did not
change his decision.

 In July of 1989, the Myerses submitted an "additional claim," asserting that their
loan debt should be reduced by their deposit accounts on a dollar-for-dollar basis, and not based
on the lesser liquidated amount of their claim. (2) The liquidating agent rejected this claim for
"equitable setoff," and the Myerses filed suit in August 1989. (3)

 The district court rendered judgment that the Myerses were entitled to have their
loan debt cancelled through a dollar-for-dollar setoff against their deposit accounts as they had
requested and were to receive distribution proceeds remaining after the setoff reduced the loan
debt to zero.

 Rio Grande appeals by seven points of error, alleging that the trial court erred in
its findings and conclusions. Rio Grande argues that the Myerses' additional claim for equitable
setoff and their suit for judicial review of the liquidating agent's decision were both untimely,
since the liquidating agent's decision had long since become final.



DISCUSSION


 The issue presented is whether the Myerses' claim for equitable setoff and their suit
for judicial review of the liquidating agent's decision were presented within the time periods
prescribed by the S & L Act. The liquidation and receivership of Rio Grande is governed by
section 8.09 of article 852a of the S & L Act. Subsection 8.09(d) provides for the filing of claims
after liquidation has been ordered:



Each depositor, creditor, or other person asserting any claim of any character
against an association in the process of liquidation under this section shall, within
18 months of the date of the first publication of notice, as provided for in this
section, present his claim in writing to the commissioner or the liquidating agent
. . . . Such claims shall state the facts on which same are based; shall set out any
right of priority of payment or other specific rights asserted by the claimant; and
shall be signed and sworn to by the claimant.



S & L Act, § 8.09(d) (West Supp. 1995) (emphasis added). Subsection 8.09(e) specifies the
period in which the liquidating agent must act on any claim submitted: "Within three months after
receipt of any claim against an association which is in liquidation, the liquidating agent shall,
unless such time is extended by written agreement with the claimant, approve or reject such claim
in whole or in part." Id. § 8.09(e) (emphasis added). Finally, subsection 8.09(f) provides for
judicial review of any claim decision and specifies a similar time limitation:



Any claimant may, within three months from the day of mailing of notice by the
liquidating agent, as provided by the preceding subsection, sue upon such claim
in the district court of Travis County, Texas; otherwise the action of the liquidating
agent shall be final and not subject to review.



Id. § 8.09(f) (emphasis added).

 Rio Grande does not dispute that the May 1988 claim form was submitted timely. 
The dispute surrounds the July 1989 claim and the subsequent August 23, 1989 suit for judicial
review. The trial court concluded as a matter of law that the Myerses complied with all conditions
precedent to preserving judicial review of the decision by the liquidating agent and that the
Myerses were entitled to an equitable setoff of the indebtedness they owed Rio Grande against the
amount owed to them on their deposit claim on a dollar-for-dollar basis. A trial court's
conclusions of law are always reviewable. Middleton v. Kawasaki Steel Corp., 687 S.W.2d 42,
44 (Tex. App.--Houston [14th Dist.]), writ ref'd n.r.e. per curiam, 699 S.W.2d 199 (Tex. 1985). 
"[C]onclusions of law by the trial court are not . . . binding and the appellate court is free to make
its own legal conclusions." Muller v. Nelson, Sherrod & Carter, 563 S.W.2d 697, 702 (Tex. Civ.
App.--Fort Worth 1978, no writ). That is, we review conclusions of law de novo. Hydrocarbon
Management, Inc. v. Tracker Exploration, Inc., 861 S.W.2d 427, 431 (Tex. App.--Amarillo 1993,
no writ).

 The Myerses maintain that the claim form allowed them to identify themselves only
as a depositor, creditor, plaintiff in a lawsuit, or other type of claimant, but did not allow them
to select more than one of these categories, nor did the form have space to present additional facts
or assert additional rights. The Myerses assert that their May 1988 claim "made no demand for
priority of payment, and asserted no right of equitable setoff." They essentially argue that the
content of the May 1988 claim was imposed upon them by the liquidating agent, thereby requiring
the additional claim in July 1989. The Myerses further argue that the August 1988 Notice of
Claim Approval contained only "extraneous statements" regarding possible setoff, an issue on
which they had not submitted a claim.

 The Myerses contend that their July 1989 claim explicitly requested equitable setoff
of their loan balance from their deposit accounts for the first time, making it an entirely separate
claim. This claim, which was the subject of the suit filed in district court, was presented within
the eighteen-month period after publication of notice provided by § 8.09(d), the only applicable
deadline according to the Myerses.

 Rio Grande recognizes that any new claim may be made at any time during the
eighteen-month period provided by subsection 8.09(d), (4) but argues that "various shades" of the
same claim may not be made repeatedly. Rio Grande argues that the Myerses cannot avoid the
three month period to challenge the liquidating agent's decision provided in subsection 8.09(f) by
recharacterizing a previous claim upon which a final decision has been rendered as a new claim.

 Rio Grande further asserts that the Notice of Claim Approval expressly informed
the Myerses that their deposit claim was approved "subject to possible offset against any loan or
debt [they] may owe Rio Grande," and the Notice explicitly described the setoff that would occur. 
Rio Grande argues that the Myerses did not challenge the terms of the Notice within three months,
and thus, the liquidator's decision became final and unreviewable.

 We agree with Rio Grande that the July 1989 claim for equitable setoff constituted
only a resubmission of one aspect of the May 1988 claim. Whether or not the May 1988 claim
explicitly requested "equitable setoff," the liquidating agent made a decision about the relationship
between money owed to depositors and money due from borrowers (that is, that loans due would
not be reduced on a dollar-for-dollar basis by the deposit accounts, but instead by the pro-rata
liquidation distribution). It is the notice of this decision that triggers the three-month period in
which a claimant may challenge the decision. Rio Grande correctly asserts that it would defeat
the speedy distribution of an insolvent institution's assets if parties were permitted to present
multiple claims asserting different rights as to money previously claimed. Additionally, Rio
Grande correctly observes that it is absurd to expect debtors to raise the issue of a debt they owe
to a failed institution, and therefore the liquidator must have the authority to make decisions in
regard to that debt even when not explicitly presented in a claim.

 Accordingly, the Myerses had an opportunity to challenge the decision on their
May 1988 claim any time within the three-month period after receiving notice of the decision. 
The July 1989 "additional claim" for equitable setoff and the subsequent suit for judicial review
occurred more than three months after the mailing of the Notice of Claim Approval dated August
18, 1988, and therefore were untimely. The Myerses argue that the August 1988 Notice did not
clearly indicate that equitable setoff would not be available for their claim. This argument is
inconsequential on these facts because if any ambiguities remained after the August 1988 Notice,
they were resolved by the February 2, 1989 letter notifying the Myerses that the sixteen percent
distribution was being applied to their loan debt. Even considering the February 1989 letter as
the point when the Myerses had notice of the liquidator's decision, no timely challenge to the
decision was made. We conclude that the trial court erred as a matter of law in concluding that
the Myerses filed their claim within the time period prescribed by the S & L Act and that the
Myerses were entitled to an equitable setoff. We sustain Rio Grande's points of error one, two,
three, and five, and need not address the remaining points of error since our holding disposes of
the case.



CONCLUSION


 The liquidating agent's decision became final and unreviewable before the Myerses
presented a timely challenge. The district court therefore was without jurisdiction to review the
liquidating agent's claim determination. We reverse the trial court judgment and render judgment
that the cause be dismissed for want of jurisdiction.



 

 Mack Kidd, Justice

Before Chief Justice Carroll, Justices Aboussie and Kidd

Reversed and Rendered

Filed: April 26, 1995

Do Not Publish

1. [1]  The amount that the Myerses originally submitted was $249,727.47, but Rio Grande
staff changed the amount on the claim form to $248,235.45 after recalculating accrued
interest. The Myerses do not challenge the change.
2. [2]  The economic difference between the setoff described in the Notice of Claim Approval
originally applied by the liquidating agent and that sought by the Myerses is significant. To
illustrate with round numbers, a deposit claim of $250,000 and loan debt of $60,000 produces
the following results:


Liquidating Agent's Setoff Method

Deposit claim $250,000 Cash proceeds $000

Loan Debt 60,000 

16% distribution credit -40,000

Remaining loan debt $20,000



Myers' Setoff Method 

Deposit claim $250,000 Cash proceeds $30,400 

Minus loan debt -60,000 Remaining loan debt $000

Net deposit claim $190,000

16% distribution $30,400
3. [3]  After the suit was filed, Rio Grande made further distributions. The Myerses' pro-rata
distributions of varying percentages of their deposit amount were applied to their loan balance,
eventually reducing it to zero, leaving a $36,709.79 residual amount which was paid to the
Myerses by check.
4. [4]  Rio Grande gives the example of a party discovering a long-forgotten account passbook
in a dresser drawer and filing a second claim, after having previously filed a claim for other
unforgotten accounts. The second claim would be permissible assuming it was within the
eighteen-month period.