Phillip MULLER et ux., Appellants,

v.

NELSON, SHERROD & CARTER et al., Appellees.

No. 17944.

Court of Civil Appeals of Texas, Fort Worth.

March 16, 1978.

McGown, Godfrey, Decker, McMackin, Shipman & McClane and Robert G. West, Fort Worth, for appellants.

Nelson, Sherrod & Carter and Eugene Sherrod, Wichita Falls, for appellees.

## OPINION

MASSEY, Chief Justice..

The appellees, individuals and partners of a law firm, and hereinafter referred to merely as Sherrod, sued the appellants, husband and wife, hereinafter referred to in the singular as Phillip, to recover attorney's fees. From the award of attorney's fees to Sherrod, Muller appealed.

Judgment is affirmed.

The judgment in favor of Sherrod was by the trial court, sitting without a jury, predicated upon right of recovery under the equitable principle of *quantum meruit*. We have no doubt of Sherrod's alternative right to recover under that theory upon some correct measure of "value" of the attorney's services, though we hold—as the trial court did not—that Sherrod was entitled to recover on the contract for his services.

The completion of the work of Sherrod upon the obligation of return performance by Phillip was in behalf of Phillip, his father Edwin Muller, and uncle Arnold Muller. By the findings and conclusions of the trial court the completion of Sherrod's services was frustrated by Phillip through his settlement of the lawsuit filed by his cousin "Jack" Muller (son of a deceased uncle, Walter Muller). It was because of Phillip's execution and delivery of a deed to "Jack's" son John, transferring 70 acres of land out of the 140 acres in controversy by the suit, that there was a dismissal of "Jack's" suit "without prejudice."

It was after such lawsuit had been filed that Phillip engaged the services of attorney Sherrod to defend the same, and, in view of the settlement effected (unbeknownst to and without concurrence by Sherrod) there was nothing by way of performance thereafter remaining to be done by Sherrod under his contract with Phillip.

Sherrod accepted employment upon the representation of Phillip that he desired services to resist the lawsuit of "Jack" because of a promise he had made to Walter Muller, father of "Jack," on his deathbed, that he would see to it that "Jack" should never have any part of the 140 acres. As is to be noticed the contract was conditional, one as applied to which no particular words were required to be construed in order to constitute a condition precedent or condition subsequent; and in the event there should arise a question on such a point the determination should be concluded by the intention of the parties as manifested by the circumstances of the particular case. *Sulzbacher v. Wilkinson*, 1 White & Willson, Texas Court of Appeals, Civil Cases, p. 555, § 994 (Commrs. of Appeals, 1881).

At time the contract of employment was made neither Sherrod nor Phillip thought that Phillip might be in any danger of losing more than a 70-acre undivided interest in the 140 acres (and the contingent fee contract dealt with only a further undivided one-half interest in and to the 70-acre undivided interest). It was for the conditional contingent fee out of the 70-acre interest that Sherrod contracted for representing Phillip and his father and uncle. (Occasion for presence of father Edwin and uncle Arnold need not be explained.)

The contract, in a letter prepared by Sherrod and signed with approval by Phillip, contained the following material language:

" . . . Of the 70 acres of land so involved in dispute, our fee will be 50% of whatever part is successfully defended in your behalf. . . . If for any reason you should decide to compromise and settle with the Plaintiff for less than the 70 acres in dispute, our fee again would be one-half of whatever you received in settlement.

" . . . Should we be unsuccessful in our defense, then there will be no charges for our legal services."

By the evidence it was shown that Phillip had promised Walter Muller, on his deathbed, that at some later time he would deed "an undivided interest in some property" to John Muller, then and at time of the settlement of the lawsuit the minor son of "Jack." Because of memory of such promise to Walter, and because of family unpleasantness, including the creation of such a hiatus in the Muller family relationships that Phillip's mother did not feel free to attend her family church, that Phillip decided to hasten the time he would deed "an undivided interest in some property" to John if to do so would resolve all difficulties. Finding that to deed an undivided 70-acre interest in the 140-acre tract to John would enable the discharge of what Phillip deemed his moral obligation and would be by "Jack" deemed sufficient reason to dismiss the suit filed by him, Phillip did proceed to execute a deed to the undivided 70-acre interest to John. Upon his having done so "Jack" dismissed the lawsuit.

By necessary implication the parties had contracted that Phillip should have the right to settle the lawsuit. By express provision of contract that in event of settlement Sherrod would become entitled to "one-half of whatever you [Phillip] received in settlement," the question is arisen upon the identity of the benefit Phillip received, and its value in money. Phillip contended that he received no benefit. By his pleading Phillip "stood on the contract" and insisted that any right of recovery by Sherrod should be by its terms and provisions, with any right of recovery by the theory of *quantum meruit* foreclosed.

In the Findings of Fact filed by the trial court appears the following:

"15. The disposition of the case between the Mullers themselves whereby Defendants Phillip and Carrol Muller conveyed a one-half interest in the 140 acres to Walter Muller's grandson, John, and Wallace Muller entered a dismissal of his lawsuit 'without prejudice' but still without recovering any interest in the land by his suit, has resulted, substantially, in a successful defense by Plaintiffs under their contract.

"16. The consideration actually received by Defendants, however, is so intermingled with the discharge of their personal obligations to Walter Muller's grandson in the dismissal agreement that it is impossible to say with certainty how much Defendants gained from the defense of the cause of action.

"17. The total legal services rendered by Plaintiffs under their employment by defendants was of the reasonable cash value of $10,500 as of December 16, 1975 when the services were terminated."

In the Conclusion of Law Filed by the trial court appears the following:

"2. The conduct of Defendants in voluntarily taking over the negotiations for a disposition of the case, coupled with the acts of defendants in making a conveyance of a one-half interest in the land in litigation to their uncle's grandson and securing a dismissal of the pending suit 'without prejudice' to the refiling of same, operated as a premature termination of Plaintiffs' services and rendered the complete performance by Plaintiffs impossible."

By other of its provisions the written contract of Sherrod and Phillip included an option for Phillip to repurchase from Sherrod any interest in the subject property Sherrod might ultimately receive predicated upon an agreed valuation and price of $300.00 per acre. Thus, there was supplied a "value" as applied to each acre of the land by a mathematical computation in the event such be of any importance as we conclude it to be. By construction Phillip's deed to John was of land having the value of $21,000.00. To do this, or to do something of this nature, was a part of what Phillip considered his moral obligation. In substance, the effect of his deed to John constituted the performance of what Phillip ultimately intended in any event. Furthermore, he accomplished his intention to deny any recovery thereof to "Jack."

■ Under the *quantum meruit* theory the court granted judgment for the identical amount to which Sherrod would have been entitled had there been a completed trial of the lawsuit, with judgment whereby Phillip should retain all his right, title, and interest to the land. This would be the maximum Sherrod could recover on the theory of *quantum meruit*. The rule appears to be: if the employee abandons his contract the employer shall be charged with only the reasonable worth, or the amount of benefit he has received upon the whole transaction, and in estimating the amount, the contract cannot be exceeded. *Carroll v. Welch*, 26 Tex. 147 (1861). Under the evidence and by the court's finding this was the value of Sherrod's services, and the record adequately supports the finding on value of the services. What the record does not show, and what the court found, however, was "it is impossible to say with certainty how much Defendants gained" as result of Sherrod's having represented them. By construction the finding amounts to one whereby the court found that there was either no evidence by Phillip in showing the value—in advancing his purposes—received from Sherrod, or, if there was such evidence it was disbelieved by the court, sitting as the trier of fact.

■ It is upon the theory of unjust enrichment on which the liability on the *quantum meruit* count is founded. An aim to avoid unjust enrichment is observed and forms the basis of the implied obligation of a defendant to pay a plaintiff for the reasonable value of materials furnished or services rendered. 62 Tex.Jur.2d, p. 467, "Work, Labor, and Materials," § 1, "In general."

The question persists: What has Phillip gained? Under the hypothesis that he intended to deed some property to John in any event he would have lost nothing if it be proper to construe the legal situation as one whereby he did, in fact, discharge the very moral obligation which he stated he felt obliged to discharge when he deeded John the undivided interest in the 140-acre tract. With the discharge of the obligation Phillip was left in the legal position of having no outstanding obligation to discharge. Thus, he has lost nothing by his deed to John; while at the same time he

has gained in that by discharging his moral obligation he obtained a victory over "Jack" in that the latter was thereby willing to and did dismiss the suit against him and his father and uncle. Thus, by construction which would result in accomplishment of right and justice in disposition of the case, we may hold, judicially, that by express contractual construction Phillip gained or preserved the full 70-acre interest, of which gain his obligation was to make compensation to Sherrod of a full 50% interest. Furthermore, other things besides material gain influence clients in the employment of professional services and their accomplishment has value. 1 Speiser, on Attorneys' Fees, 323, "Determining Reasonable Value," § 8:11, "Results and benefits obtained." See also in some volume, p. 296 under § 8:2, "General rule," the matters to be considered in determining value.

It is by what is called *quantum meruit* that equity seizes upon a transaction to deal with situations in which one person is accountable to another on the ground that otherwise he would unjustly benefit or the other person would unjustly suffer loss. A person who has been unjustly enriched at the expense of another is required to make restitution to the other; generally, however, where the benefit to the one person and loss to the other do not coincide the amount of recovery is usually limited to the amount by which there has been enrichment. However, a person who has been unjustly deprived of his property or its value or the value of his labor may be entitled to maintain an action for restitution against another although the other has not in fact been enriched thereby. Restatement of the Law, Restitution, Ch. 1, "Introductory Matters," § 1, "Unjust Enrichment."

To be applied to the particular matter involved in this suit would be the rule from Restatement of the Law, Restitution, Ch. 8, "Actions for Restitution," § 155, "Non-Tortious Recipient Not More At Fault Than Claimant." The section, in part, deals with a circumstance where the value of the benefit to the recipient may not be the same as the value of what is given him, considering his purposes. At the very beginning of the section is the following:

"Where a person is entitled to restitution from another because the other, without tortious conduct, has received a benefit, the measure of recovery for the benefit thus received is the value of what was received, *limited*, if the recipient was not at fault or was no more at fault than the claimant, *to its value in advancing the purposes of the recipient* . . . ." (Emphasis supplied.)

In the instant case Sherrod discharged his burden of proof to the extent of proving the general value of legal services rendered by him as his performance due Phillip under the contract. He proved the fact of benefit to Phillip as the advancement of Phillip's purposes, but nothing of the "value" of the benefit to Phillip. Of course the value of the benefit to Phillip was, under the circumstances, peculiarly within Phillip's own knowledge and as such matter available of proof by him while not available of proof by Sherrod. Yet the burden of proof on the issue remained Sherrod's. Here what is called the "burden of going forward with the evidence" became that of Phillip. Sherrod had completed all thereon necessary to be received in his behalf in the proof of his *prima facie* case when he proved the rendition of his services and their value on the market (as constituting value received by Phillip).

The "value" of the benefit found to have been received by Phillip was not in excess of the amount of the maximum prescribed by the parties' contract. Sherrod was by the legal theory of *quantum meruit* found to be entitled to an amount decreed by the court which exactly matched the amount mathematically calculable by the parties' contract if treated as fully and successfully performed by him.

We take occasion, however, to state that in our opinion we are not bound to affirm the judgment as restricted to the consideration of the case on the theory of *quantum meruit*. It is the duty of an appeals court to affirm a judgment if there be any authorized theory upon which such

**702**

might be done. 4 Tex.Jur.2d, p. 542, "Appeal & Error—Civil Cases," § 885, "(Affirmance)—In general." The factual findings of the trial court in a case tried before the court without a jury are binding upon the appellate court, but the conclusions of law by the trial court are not likewise binding and the appellate court is free to make its own legal conclusions. 4 Tex.Jur.2d, p. 279, "Appeal & Error—Civil Cases," § 783, "Findings, conclusions, and judgment of trial court."

From the contract of the parties it is obvious that settlement of the case by Phillip would effect a completion of the contract exactly as would have been the situation had there been a successful defense of "Jack's" suit in court. We hold that the proof demonstrated the completion of the contract. By a finding of fact by the trial court the settlement resulted, substantially, in a successful defense. In other words, there was the constructive fact finding that there was a completed contract. A contract fully performed entitles both parties to that for which they had contracted. Hence Sherrod was entitled to that for which he had contracted upon a contractual theory, as for specific performance by Phillip of the obligatory return performance. On his entitlement all that we have earlier written upon the matter of a proper determination of "value" to Phillip *in the advancement of his purposes* has application. Also noticed is that the contract, treated as one accomplished, specified the "measure" by which the property, per acre, might be valued in the event the contract might be treated as fully performed. The calculable amount to which Sherrod would thereby be entitled was exactly the same figure as the one upon which the court rendered its judgment, though upon a theory other than that of completed contract. *Carroll v. Welch,* *supra* ; 62 Tex.Jur.2d, p. 502, "Work, Labor and Materials," § 25, "(Measure and amount of recovery)—Effect of express contract."

Hence there was no error in the judgment, either viewed as one upon which there was entry according to the theory of completed contract or, alternatively, according to the theory of *quantum meruit.*

All points of error have been severally considered; they are overruled.

Judgment is affirmed.