## McALLEN POLICE OFFICERS UNION and the City of McAllen, Appellants,

v.

## Ricardo TAMEZ, Individually and as President of the McAllen Professional Law Enforcement Association, and McAllen Professional Law Enforcement Association, Appellees.

No. 13–01–00119–CV.

Court of Appeals of Texas, Corpus Christi.

June 6, 2002.

Rehearing Overruled July 18, 2002.

Roberto M. Garcia, Garcia & Lopez, Attorneys at Law, Edinburg, James E. Darling, Attorney at Law, Kevin D. Pagan, Assistant City Attorney, McAllen, for Appellant.

Chris A. Brisack, Norquest & Brisack, LLP, Gil Peralez, Attorney at Law, McAllen, for Appellee.

Before Chief Justice VALDEZ and Justices HINOJOSA and CASTILLO.

## OPINION

Opinion by Justice HINOJOSA.

Appellants, the City of McAllen, Texas and the McAllen Police Officers Union, appeal from an order of the 93rd District Court of Hidalgo County, requiring the City to conduct an election to determine the exclusive bargaining agent for the City's police officers. We reverse and render.

### A. BACKGROUND

At an election held on May 6, 2000, the voters of the City of McAllen approved collective bargaining for the City's police department. *See* TEX. LOC. GOV'T CODE ANN. § 174.051 (Vernon 1999). At that time, two unions—the McAllen Police Officers Union (MPOU) and the McAllen Professional Law Enforcement Association (MPLEA)—sought recognition as the exclusive bargaining agent for McAllen police officers. Soon after the election, the McAllen city manager, Mike Perez, met with representatives of the two unions in an attempt to obtain an agreement on how to select the bargaining agent for the police officers. From May 8 through June 1, 2000, and while discussions between the City and the two unions were ongoing, representatives of MPOU circulated a petition seeking support for the designation of MPOU as the bargaining agent for the officers.

On June 1, MPOU sent the petition, which contained 133 signatures of the police department's 228 officers, to Perez together with a request that MPOU be recognized by the City as the exclusive bargaining agent for the officers. Upon receiving the petition, Perez expressed concerns regarding the petition's validity. In response to those concerns, a representative of MPOU posted a notice in the police department's bulletin board, advising all officers of Perez's concerns of possible coercion and stating that any officer who felt that he or she had been intimidated into signing the petition should contact Perez. Perez received no complaints of intimidation from any officer. In addition, the president of MPOU submitted an affidavit certifying that the petition had been circulated from May 8 through June 1, 2000. His concerns satisfied, Perez advised both unions that he intended to recommend to the McAllen City Commission

that it accept MPOU's petition as evidence of majority representation.

On August 14, 2000, the McAllen City Commission took up the issue of which union to recognize as the exclusive bargaining agent for the City's police officers. Specifically, the City Commission considered whether to recognize MPOU as the bargaining agent. The City Commission heard from a representative of MPLEA, however MPLEA did not present the commission with any evidence that it represented a majority of the City's police officers. After hearing from MPLEA, the City Commission voted unanimously to recognize MPOU as the exclusive bargaining agent for the City's police officers.

On August 24, 2000, appellees, MPLEA and Ricardo Tamez, individually and as president of MPLEA, sued the City in the district court. Appellees asked the court for: (1) a declaratory judgment that a question existed regarding which union was the exclusive bargaining agent for the City's police officers; and (2) a writ of mandamus compelling the City to conduct an election to determine whether MPLEA or MPOU should be recognized as the exclusive bargaining agent for the officers. *See* TEX. LOC. GOV'T CODE ANN. § 174.104 (Vernon 1999). The City answered and filed a third-party petition against MPOU as the true party in interest. On January 29, 2001, after hearing evidence and argument from all parties, the trial court ordered the City to hold an election to determine whether MPOU or MPLEA should be the exclusive bargaining agent for the City's police officers. This appeal ensued.

## B. STANDARD OF REVIEW

### 1. *Mandamus Proceedings*

The Texas Supreme Court has recognized that an appeal from a proceeding for a writ of mandamus initiated in a trial court is treated differently from an appeal from a proceeding for a writ of mandamus initiated in a court of appeals. *See Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex.1991). "We do not review the trial court's findings of fact and conclusions of law under the abuse of discretion standard applicable to mandamus actions originating in appellate courts." *Univ. of Tex. Law Sch. v. Texas Legal Found.*, 958 S.W.2d 479, 481 (Tex.App.-Austin 1997, no writ) (citing *Anderson*, 806 S.W.2d at 794 n. 2). Rather, "we review them in accordance with the standards generally applicable to trial-court findings and conclusions. That is, we review findings of fact for legal and factual evidentiary support . . . and we review conclusions of law de novo." *Univ. of Tex. Law Sch.*, 958 S.W.2d at 481 (citing *Anderson*, 806 S.W.2d at 794; *City of Austin v. Austin Prof'l Fire Fighters Ass'n*, 935 S.W.2d 179, 181(Tex.App.-Austin 1996), *judgment vacated pursuant to settlement*, No. 97–0077 (Tex.1997)).

A trial court's conclusions of law are not binding on this Court, and we are free to make our own legal conclusions. *Harlingen Irrigation Dist. Cameron County No. 1 v. Caprock Communications*, 49 S.W.3d 520, 530 (Tex.App.-Corpus Christi 2001, pet denied); *Muller v. Nelson Sherrod & Carter*, 563 S.W.2d 697, 701 (Tex.Civ.App.-Fort Worth 1978, no writ). "Conclusions of law are reviewed de novo as a question of law and will be upheld if the judgment can be sustained on any legal theory supported by the evidence." *Harlingen Irrigation Dist.*, 49 S.W.3d at 520 (citing *Circle C Child Dev. Ctr., Inc. v. Travis Cent. Appraisal Dist.*, 981 S.W.2d 483, 485 (Tex.App.-Austin 1998, no pet.)). A trial court's conclusions of law may not be reviewed for factual sufficiency. *Id.* Conclusions of law may be reversed only if they are erroneous as a

matter of law. *Stable Energy, L.P. v. Newberry,* 999 S.W.2d 538, 547 (Tex.App.-Austin 1999, pet. denied); *Hofland v. Fireman's Fund Ins. Co.,* 907 S.W.2d 597, 599 (Tex.App.-Corpus Christi 1995, no writ). Incorrect conclusions of law do not require reversal, provided that the controlling findings of fact support a correct legal theory. *Stable Energy,* 999 S.W.2d at 547.

### 2. *Declaratory Judgments*

Declaratory judgments are reviewed under the same standards as other judgments and decrees. Tex. Civ. Prac. & Rem. Code Ann. § 37.010 (Vernon 1986). The trial court's conclusion, being one of law, is reviewed de novo and will be upheld if the judgment can be sustained on any legal theory supported by the evidence. *Harlingen Irrigation Dist.,* 49 S.W.3d at 530; Hall, *Standards of Appellate Review in Civil Appeals,* 21 St. Mary's L.J. 865, 923–24 (1990). If reversal is warranted, we render the judgment the trial court should have rendered, unless a remand is necessary for further proceedings or the interests of justice require a remand. Tex. R.App. P. 43.3; *see also Lone Star Gas Co. v. R.R. Comm'n of Tex.,* 767 S.W.2d 709, 710 (Tex.1989) (quoting former Tex.R.App. P. 81(c)).

### C. Selection of Bargaining Agent by Petition

In MPOU's first issue and the City's first issue, appellants contend the trial court erred by concluding that a petition is not a proper method of selecting an exclusive bargaining agent under section 174.102 of the local government code. Tex. Loc. Gov't Code Ann. § 174.104 (Vernon 1999). MPOU and the City assert that a petition is a proper means of demonstrating selection of an exclusive bargaining agent by a majority of the City's police officers for purposes of section 174.102. Appellees do not contend that selection of an exclusive bargaining agent by petition is improper under section 174.102.

Section 174.102 of the Texas Local Government Code provides:

> A public employer shall recognize an association selected by a majority of the police officers of the police department of a political subdivision as the exclusive bargaining agent for the police officers of that department unless a majority of the police officers withdraw the recognition.

Tex. Loc. Gov't Code Ann. § 174.102 (Vernon 1999). Section 174.102 does not specify how a majority of the police officers shall select the exclusive bargaining agent.

We note that the legislature enacted a similar statute for fire fighters in municipalities with a population of 1.5 million or more. That statute provides that a petition signed by a majority of the fire fighters in the municipality is a proper method for selecting the exclusive bargaining agent. Tex. Loc. Gov't Code Ann. § 143.204 (Vernon 1999). We conclude that the subject matter of section 143.204 is sufficiently similar to that of section 174.102 so as to be instructive in our interpretation of the latter.

We hold that the selection of a bargaining agent by municipal police officers under section 174.102 may be accomplished by means of a petition. Tex. Loc. Gov't Code Ann. § 174.102; *see also Linden Lumber Div. v. N.L.R.B.,* 419 U.S. 301, 304, 95 S.Ct. 429, 42 L.Ed.2d 465 (1974) (recognizing "that while the election process has acknowledged superiority in ascertaining whether a union has majority support, [signed employee authorization] cards may adequately reflect employee sentiment"). We hold the trial court erred when it concluded that a petition is not a proper method of selecting the exclusive

bargaining agent under section 174.102. We sustain MPOU's first issue and the City's first issue.

## D. COERCION

In its second issue, MPOU contends there is no evidence that the petition, selecting MPOU as the exclusive bargaining agent for the City's police officers, did not reflect the free choice of the officers who signed it.

The trial court made the following findings of fact:

1.18 MPLEA did not have a reasonable chance to present its views and to insure the employee's choice was not the result of group and/or supervisory pressures and/or misrepresentation and/or coercion instead of an individual decision made with adequate safeguards and assurances of privacy.

1.20 Three supervisors and one other personnel aligned with MPOU presented a petition to McAllen police officers.

Based on the these findings, the trial court concluded:

2.10 The use of petitions utilized and signed by those purportedly supporting MPOU was unfair and improper, and not a reliable indicator of the police officer's true desires.

2.12 Police officers may have been, and more likely than not were improperly influenced by their superiors and/or co-workers.

### 1. *Finding of Fact 1.18*

█ The record shows that MPLEA president Ricardo Tamez sent a letter to the McAllen city manager stating it was his understanding that an election was going to be held to determine which union would be designated the exclusive bargaining agent for the City's police officers. Tamez claimed there was "some confusion" being created by a petition MPOU was circulating which asked that MPOU be recognized as the bargaining agent for the City's police officers. Tamez accused MPOU of disseminating "misinformation" to the officers.

John Curtis, General Counsel for the Combined Law Enforcement Associations of Texas (CLEAT), later sent a letter to the city manager on behalf of MPLEA. Curtis raised the concern that MPOU's petition was being circulated by supervisors, complained that the petition process lacked secrecy, and questioned whether officers had voluntarily signed the petition.

Curtis, on behalf of MPLEA, addressed the McAllen City Commission at its August 14, 2001, meeting and asked the commission to consider ordering an election. After Curtis finished his presentation, the commission voted unanimously to recognize MPOU as the exclusive bargaining agent for the City's police officers.

We have reviewed the entire record and find no evidence to support the trial court's finding of fact 1.18. The record contains absolutely no evidence that MPLEA was prevented from presenting its view to the City or was prevented from contacting any officers to ascertain whether they had voluntarily signed MPOU's petition.

### 2. *Finding of Fact 1.20*

█ The president of MPOU, Sergeant Michael Zellers, testified that he, Officer Rigoberto Gonzalez, and Sergeants Sam Palomo and Oscar Saldana circulated the petitions. We conclude the evidence is legally and factually sufficient to support the trial court's finding of fact 1.20.

### 3. Conclusions of Law

■ We now examine the trial court's conclusions of law to determine whether they are erroneous, as a matter of law. The trial court concluded that the petition process was unfair, improper, and unreliable, and that the officers who signed the petition were likely improperly influenced by their supervisors. Appellees contend the MPOU petition was not fairly solicited because there was supervisor involvement. We disagree.

■ The mere fact that a petition for the selection of an exclusive bargaining agent is circulated by a supervisor is not, by itself, sufficient to support a conclusion that the petition process is unfair, improper or unreliable. The authorities cited by appellees in support of the trial court's conclusions involve persons who met the definition of "supervisor" specifically set forth in the National Labor Relations Act (NLRA), and who actually supervised a substantial number of the persons who signed the petitions. *See* 29 U.S.C. § 152(11). The NLRA defines a supervisor as follows:

> The term "supervisor" means any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment.

*Id.*

In *N.L.R.B. v. Heck's, Inc.,* 386 F.2d 317, 322 (4th Cir.1967), the Fourth Circuit Court of Appeals explained the rationale behind not allowing "supervisors" to solicit signatures on union authorization cards. In *Heck's,* several department heads [1] who met the N.L.R.A.'s definition of "supervisor" participated in the union's campaign to obtain recognition, despite opposition from the company's management. *Id.* The court found that participation by the department heads was sufficient to taint the drive for unionization and call into question the voluntariness of the signatures on the authorization cards. *Id.* The Court explained that the types of day-to-day authority which elevated the department heads to the status of "supervisors" also provided a basis for potential tyranny when that same authority was improperly exercised by a supervisor thwarted in his aim to obtain union recognition. *Id.*

However, in situations where supervisory personnel do not meet the statutory definition of "supervisor," or where the participation of the supervisory personnel in the union organizing activities is minimal, the courts have been reluctant to find any impropriety in the unionization process. *See Conn. Distribs., Inc. v. N.L.R.B.,* 681 F.2d 127, 129 (2nd Cir.1982) (where employee's duties were of essentially routine nature, evidence was far from clear that employee met statutory definition of "supervisor," and accordingly, anti-union petition circulated by said employee could not be attributed to company's management); *Int'l Union v. N.L.R.B.,* 363 F.2d 702, 707 (D.C.Cir.1966) (limited participation and unclear status of the involved supervisory personnel negatived the possibility that they may have coerced employees into signing union authorization cards); *N.L.R.B. v. Majestic Weaving Co.,* 355 F.2d 854, 858 (2nd Cir. 1966) (employees who engaged in union organizing activities lacked supervisory authority; therefore, there was no basis to

1. The department heads were not part of management.

find that company's management rendered unlawful assistance to union attempting to organize). We find these cases instructive in determining whether the officers in the present case were coerced into signing the petition.

We have reviewed the entire record and find no evidence showing the number of signatures that supervisors solicited from their respective officers. Also, the record contains no evidence that the sergeants who circulated the petition had any actual supervisory authority over the officers. Because the evidence does not support any legal theory which would sustain the judgment in the present case, we conclude that the trial court's conclusions of law 2.10 and 2.12 cannot be upheld. *Harlingen Irrigation Dist.,* 49 S.W.3d at 530. Accordingly, we hold that the trial court's conclusions of law 2.10 and 2.12 are erroneous, as a matter of law. *Id.* MPOU's second issue is sustained.

### E. THE "QUESTION" OF MAJORITY REPRESENTATION

In its third issue, MPOU contends that only a public employer has standing to raise a "question" under section 174.104(a) of the local government code. In the City's second issue and MPOU's fourth issue, appellants contend that the mere existence of a competing union and unsupported allegations that MPLEA represented a majority of the City's officers are insufficient to raise such a "question." [2] *See* TEX. LOC. GOV'T CODE ANN. § 174.104

**2.** In its fourth issue, MPOU also addresses the issue of coercion. MPOU contends that an unsupported allegation of coercion does not constitute a legitimate "question" under section 174.104(a) of the local government code. MPOU concedes that evidence of coercion would raise a question of whether MPOU truly represented a majority of the officers, but asserts that appellees produced no evidence of coercion.

(Vernon 1999). Appellees assert that MPLEA has raised a "question" regarding whether MPOU is the majority representative of the officers; therefore, an election must be conducted in accordance with section 174.104.

The issue of who may raise a "question" under section 174.104(a) of the local government code is an issue of first impression in Texas that presents a question of statutory interpretation. Matters of statutory construction are questions of law for the courts to decide. *Johnson v. City of Fort Worth,* 774 S.W.2d 653, 656 (Tex. 1989). As such, they are subject to *de novo* review. *Armbrister v. Morales,* 943 S.W.2d 202, 205 (Tex.App.-Austin 1997, no writ) (citing *Barber v. Colorado Indep. Sch. Dist.,* 901 S.W.2d 447, 450 (Tex.1995)). "When we construe a statute, our objective is to determine and give effect to the Legislature's intent." *Am. Home Prods. Corp. v. Clark,* 38 S.W.3d 92, 95 (Tex. 2000). We may consider, among other matters, the: (1) object sought to be attained; (2) circumstances under which the statute was enacted; (3) legislative history; (4) common law or former statutory provisions, including laws on the same or similar subjects; (5) consequences of a particular construction; (6) administrative construction of the statute; and (7) the title (caption), preamble, and emergency provision of the statute. TEX. GOV'T CODE ANN. § 311.023 (Vernon 1998). We start by looking at the plain and common meaning of the statute's words, viewing its terms in context and giving them full ef-

We previously found no evidence in the record that police supervisors influenced the signing of the petition and held that the trial court erred in concluding that the officers were likely influenced in signing the petition. Thus, we need not address this part of MPOU's fourth issue.

fect. *Liberty Mut. Ins. Co. v. Garrison Contractors, Inc.*, 966 S.W.2d 482, 484 (Tex.1998). We are mindful that "every word in a statute is presumed to have been used for a purpose; and a cardinal rule of statutory construction is that each sentence, clause and word is to be given effect if reasonable and possible." *Perkins v. State*, 367 S.W.2d 140, 146 (Tex. 1963). The statute should be considered in its entirety when determining the meaning of its component parts. *See Bridgestone/Firestone, Inc. v. Glyn–Jones*, 878 S.W.2d 132, 133 (Tex.1994). We also should presume the Legislature intended a "result feasible of execution" when it enacted the statute. *In re Missouri Pac. R.R. Co.*, 998 S.W.2d 212, 216 (Tex.1999) (quoting TEX. GOV'T CODE ANN. § 311.021(4) (Vernon 1998)). With these principles in mind, we turn to the statutory language to be construed.

Section 174.104(a) provides:

A question of whether an association is the majority representative of the employees of a department under sections 174.101–103 shall be resolved by a fair election conducted according to the procedures agreed on by the parties.

TEX. LOC. GOV'T CODE ANN. § 174.104(a) (Vernon 1999).

The plain language of the statute provides little guidance as to who may raise a "question" related to majority representation; however, when read in conjunction with section 174.102, we find that it is the "public employer [that] shall recognize an association selected by a majority of the police officers." TEX. LOC. GOV'T CODE ANN. § 174.102 (Vernon 1999). Therefore, it logically follows that the public employer, being burdened with the affirmative duty of recognizing an association, should also be allowed to question the evidence of majority representation. The issue remains, however, whether other entities

may also "question" this issue. To resolve this issue, we look to the purpose of the statute.

The legislature specifically provided "that fire fighters and police officers, *like employees in the private sector*, should have the right to organize for collective bargaining, as collective bargaining is a fair and practical method for determining compensation and other conditions of employment." TEX. LOC. GOV'T CODE ANN. § 174.002 (Vernon 1999) (emphasis added). In the private sector, employers and labor units are governed by the National Labor Relations Act (NLRA). 29 U.S.C. §§ 151–169. This Court has previously noted that the duty to bargain collectively and in good faith imposed by chapter 174 of the local government code is the same duty imposed by the NLRA upon private sector employers and labor units. *Corpus Christi Fire Fighters Ass'n v. City of Corpus Christi*, 10 S.W.3d 723, 726 (Tex.App.-Corpus Christi 1999, pet. denied). Therefore, we conclude that the provisions of the NLRA, and the cases interpreting that Act, are instructive in the resolution of the issue before us.

The issue of who may "question" a demand for union recognition in the private sector has been addressed by the National Labor Relations Board (NLRB) and several federal courts. In *Bruckner Nursing Home*, the NLRB held that among previously nonunionized employees, "the necessity for a Board-conducted election attach[es] only when a properly supported petition has been filed by one or more of the competing labor organizations." *Bruckner Nursing Home*, 262 NLRB 955, 958 (1982). The NLRB further stated: "[w]here no petition has been filed [by a competing labor union], an employer will be free to grant recognition to a labor organization with an uncoerced majority. . . ." *Id.* The NLRB reasoned that the filing of a valid petition by at least one of

the competing unions indicates that it has "substantial support" among the employees. *Id.* at 957 n. 14. Under the NLRB's regulations, an election will not be held unless a petition filed by a competing union has at least thirty percent support. 29 C.F.R. § 101.18(a). The NLRB's decision in *Bruckner* allows competing unions to raise a "question" concerning an incumbent union's representation, but only when the competing union can show that it has substantial support among the employees, in the form of a petition signed by at least thirty percent of the employees. *Human Dev. Ass'n v. N.L.R.B.,* 937 F.2d 657, 666 (D.C.Cir.1991); *Haddon House Food Prods., Inc. v. N.L.R.B.,* 764 F.2d 182, 186 (3rd Cir.1985); *Bruckner,* 262 N.L.R.B. at 957. We find the holding and reasoning of the N.L.R.B. and the federal courts instructive on this issue.

 Accordingly, we hold that under chapter 174 of the local government code, like under the NLRA, the mere existence of a competing union or association does not raise a "question" as to whether the recognized union or association is the majority representative of the employees. We further hold that a question concerning representation may be raised by a competing union or association, but the competing union or association must present the public employer with evidence, preferably in the form of a petition, that it has "substantial support" among the employees. Allowing a third party to raise a "question" concerning a claim of majority representation without evidence of "substantial support," would allow a single uninterested or disgruntled person to frivolously force an election on the issue. We conclude that such a consequence would be unduly burdensome to the parties involved and would not be in the best interest of the public. *See* TEX. GOV'T CODE ANN. § 311.021 (Vernon 1998) ("In enacting a statute, it is presumed that … public interest is favored over any private interest.").

Accordingly, we hold that MPLEA has standing to raise a question as to whether MPOU is the majority representative of the City's police officers. MPOU's third issue is overruled.

However, the record reflects that MPLEA adduced no evidence of "substantial support" among the City's police officers. Therefore, we hold that MPLEA has failed to raise a "question" concerning MPOU's majority representation. Because no such question has been raised, we conclude that an election under section 174.104 of the local government code is not authorized. We sustain the City's second issue and MPOU's fourth issue.

Having held there is no evidence that MPOU's petition did not reflect the free choice of the officers who signed it, and having held that no "question" concerning MPOU's representation has been raised, we hold the trial court erred in concluding that an election was required. In light of our disposition, it is not necessary that we address MPOU's remaining issue. TEX. R.APP. P. 47.1.

We reverse the trial court's order and render judgment that MPLEA's requests for a declaratory judgment that a question exists regarding which union is the exclusive bargaining agent for the City's police officers and a writ of mandamus compelling the City to conduct an election to determine whether MPLEA or MPOU should be recognized as the exclusive bargaining agent for the officers are denied.

CASTILLO, J., dissents.

Dissenting Opinion by Justice CASTILLO.

I respectfully dissent.