107 S.W.3d 624 (2002)
In the Interest of W.G.S., Jr., A Minor Child.
No. 13-01-401-CV.
Court of Appeals of Texas, Corpus Christi-Edinburg.
August 30, 2002.
*625 John Worley, Rhonda Pressley, Asst. Attys Gen., Austin, for appellant.
William A. Dudley, Corpus Christi, for appellee.
Before Justices HINOJOSA, YAÑEZ, and CASTILLO.

OPINION
YAÑEZ, Justice.
By one point of error, the State appeals the judgment of the trial court ordering appellee, William Gene Shoemaker, to pay child support arrears in the amount of $9,089.33 with interest at the rate of twelve percent per annum. Specifically, the State contends that the judgment should have included interest on the arrearage that existed on September 1, 1991 for a total judgment of no less than $21,392.41 as of September 13, 2000. We reverse the order of the trial court and remand for proceedings consistent with this opinion.

*626 Background
William G. Shoemaker and Regenia K. Sammons divorced on March 27, 1984. In addition to setting the schedule and amount of child support payments, the divorce decree found that Shoemaker owed $520 in unpaid temporary support.[1] After entry of the decree, Shoemaker failed to pay any support until December 1990. In August 2000, the State filed a Notice of Change of Payee because the child began to receive public assistance. In September 2000, the State moved to reduce arrears to judgment and modify support.
On December 13, 2000, the child support master held a hearing with the parties. One of the issues in the dispute was whether to assess statutory interest on payments accruing but not paid before September 1, 1991, the effective date of the interest statute. The child support master recommended that interest should be assessed only on those payments coming due after September 1, 1991. The State indicated that it would not be able to manually calculate the rate and amount of arrearage which had accrued after September 1, 1991 without consulting its software program, which was not available in court. However, the State "indicated an amount could be agreed upon by the parties and submitted with the written form of judgment." The child support master ordered the State to submit a written order and judgment on or before January 31, 2001, and if the State failed to do this, all parties should appear for a hearing on January 31, 2001. No order was submitted prior to the deadline, so the parties appeared on January 31, 2001. The State submitted a proposed order, and the master signed the order approving of the $9,089.33 amount.
The same day that the order was signed, Sammons submitted a notice of appeal to the trial court, challenging the master's decision regarding the exclusion of interest on child support arrearages and the amount of final judgment. The trial judge held a de novo hearing in February 2001, following which the court denied Sammons's appeal of the master's order and affirmed the order. The record reflects that the trial court instructed the State to prepare and submit the order omitting interest on arrears accumulated prior to September 1, 1991. The State filed a request for findings of fact and conclusions of law, which the court made. The State then filed a motion for new trial, but after a hearing, the court denied the motion. The appeal to this Court followed.
In its appeal, the State asserts that the trial court misinterpreted the statute which provides for the imposition of interest on child support arrearage.[2] The State contends that the trial court erred in failing to include interest on the total arrearage that existed on September 1, 1991, the enactment date of the interest statute.

Standard of Review
Matters of statutory construction are questions of law for the courts to decide. Johnson v. City of Fort Worth, 774 S.W.2d 653, 656 (Tex.1989). As such, they are subject to de novo review. McAllen *627 Police Officers' Union v. Tamez, 81 S.W.3d 401, 408 (Tex.App.-Corpus Christi 2002, pet. dism'd by agr.). In the construction of a statute, we may consider, among other matters, the: (1) object sought to be attained; (2) circumstances under which the statute was enacted; (3) legislative history; (4) common law or former statutory provisions, including laws on the same or similar subjects; (5) consequences of a particular construction; (6) administrative construction of the statute; and (7) the title (caption), preamble, and emergency provision of the statute. Tex. Gov't Code Ann. § 311.023 (Vernon 1998). We start by looking at the plain and common meaning of the statute's words, viewing its terms in context and giving them full effect. McAllen Police Officers' Union, 81 S.W.3d at 408.
Since the State had the burden of proof as to the total arrearage, it must show that the record establishes the amount of the arrearage as a matter of law. See Curtis v. Curtis, 11 S.W.3d 466, 472 (Tex.App.-Tyler 2000, no pet.); Buzbee v. Buzbee, 870 S.W.2d 335, 339 (Tex.App.-Waco 1994, no writ). This includes a two-part demonstration: first, the record must show that no evidence supports the trial court's adverse finding, and second, if there is no evidence to support the adverse finding, an examination of the entire record must reveal that the contrary position has been established as a matter of law. See Curtis, 11 S.W.3d at 472; Buzbee, 870 S.W.2d at 339.
In addition, trial courts are required to confirm the amount of child support arrears and render a judgment which includes interest, given that an unpaid child support payment is a final judgment for the amount due and owing, including interest. In the Interest of M.C.R., 55 S.W.3d 104, 108 (Tex.App.-San Antonio 2001, no writ); see Tex. Fam. Code Ann. § 157.261 (Vernon Supp.2002).

Analysis
The initial session law that codified interest to run on child support arrears notes that the "Act takes effect September 1, 1991, and applies to child support due and owing after the effective date of th[e] Act." Act of June 16, 1991, 72nd Leg., R.S., ch. 467, 1991 Tex. Gen. Laws 1695 (amended 1993) (current version at Tex. Fam. Code Ann. § 157.267 (Vernon 1996)). In 1993, the Texas Family Code was amended to provide for twelve percent simple interest per year instead of the ten percent interest a year computed monthly provided for in the 1991 statute. Act of May 15, 1993, 73rd Leg., ch. 150, 1993 Tex. Sess. Law Serv. 304 (Vernon) (amended 1999) (current version at Tex. Fam. Code Ann. § 157.265 (Vernon Supp.2002)). The 1993 session law notes, "This Act applies to child support payments due on or after September 1, 1991, and any accrued arrears which were owing on or after September 1, 1991, in: (1) an action commenced on or after the effective date of this Act ...." Id. In 1999, the code was amended again to provide that interest accrues on the portion of delinquent child support that is greater than the amount of the monthly periodic support obligation at the rate of twelve percent simple interest from the date the support is delinquent until the date the support is paid or the arrearages are confirmed and reduced to money judgment. Act of June 18, 1999, 76th Leg., R.S., ch. 943, 1999 Tex. Sess. Law Serv. 3679 (Vernon) (amended 2001) (current version at Tex. Fam. Code Ann. § 157.265 (Vernon Supp.2002)). The amendment goes on to provide that it takes effect January 1, 2000, and applies only to a child support payment that becomes due on or after that date. Id. A child support payment that becomes due *628 before the effective date of the law is governed by the law in effect on the date the child support payment became due, and the former law is continued in effect for that purpose.
This Court has held that Texas common law favored the award of prejudgment interest on awards for delinquent child support, and that the 1991 enactment of section 157.267 (section 14.34 of the former Texas Family Code) codified this principle. Castle v. Harris, 960 S.W.2d 140, 143-44 (Tex.App.-Corpus Christi 1997, no pet.). This conclusion suggests that to exempt arrears existing before codification of the interest statute from the application of interest would defeat the common law principle favoring the award of prejudgment interest on awards for delinquent child support.
Moreover, the plain language of the 1991 act, which states that it "applies to child support due and owing after the effective date of th[e] Act," mandates the application of interest to whatever arrearage is due and owing after the effective date of the act. Act of June 16, 1991, 72nd Leg., R.S., ch. 467, 1991 Tex. Gen. Laws 1695 (amended 1993) (current version at Tex. Fam. Code Ann. § 157.267 (Vernon 1996)). In the present case, on the day after the effective date of the act, September 2, 1991, approximately $13,000 in child support arrears was due and owing. It follows that the provisions of the act apply to this amount, as well as to any unpaid payments accumulating after the effective date of the statute.[3] The language of the 1993 session law points to this conclusion as well. Act of May 15, 1993, 73rd Leg., ch. 150, 1993 Tex. Sess. Law Serv. 304 (Vernon) (amended 1999) (current version at Tex. Fam. Code Ann. § 157.265 (Vernon Supp.2002)) ("This Act applies to child support payments due on or after September 1, 1991, and any accrued arrears which were owing on or after September 1, 1991...."). Accordingly, we hold that the amount of arrears owing on September 1, 1991 should be included in the principal upon which interest accrues after the September 1, 1991 enactment date of the statute at the rate statutorily prescribed in the 1993 and 1999 acts.
We conclude that the first prong of the legal sufficiency test is met: that no evidence supports the trial court's exclusion of interest on child support arrearages. Now, we consider whether the record shows that the contrary position has been established as a matter of law. In this respect, the State offered into evidence a detailed listing of the amount of child support due, when payments were made and for what amount, payment due dates, and interest as it accumulated.[4] Shoemaker stipulated to the accuracy of the document as far as the amount of payments due, when payments were made and for what *629 amount, and the payment due dates.[5] The undisputed data reflected in the document is sufficient to calculate the proper amount of arrears. However, in light of the State's admitted miscalculation of arrears and interest on that document, any final judgment should be limited to the amount specified in the pleadings, $21,392.41. See Employers Ins. of Wausau v. Schaefer, 662 S.W.2d 414, 419 (Tex.App.-Corpus Christi 1983, no writ) (noting that a judgment for damages in excess of the amount pleaded is erroneous even though a larger amount might be warranted by the evidence in a suit to recover workmen's compensation benefits); Thate v. Tex. & Pac. Ry. Co., 595 S.W.2d 591, 601 (Tex.Civ. App.-Dallas 1980, writ dism'd) (holding that judgment must conform to the pleadings where the jury's award of future medical expenses exceeded the amount pleaded).
However, we must address an additional argument proffered by Shoemaker challenging the constitutionality of the child support interest statute. Shoemaker argues that interpreting the statute to allow interest on arrearages which accumulated before September 1, 1991 would render the statute an unconstitutional ex post facto law. Shoemaker argues:
By assessing a retroactive pre-judgment interest calculation to a [sic] child support arrearages in calendar year 2001 for arrearages not paid in 1985 to 1991, when, if those arrearages had been assessed prior to 1991 interest was not allowed, the State is attempting to apply a law in such a fashion as would subject a party to imprisonment prior to enactment of the law.
A retroactive law is one meant to act on things that are past, see Mellinger v. City of Houston, 68 Tex. 37, 3 S.W. 249, 252-53 (1887), while an ex post facto law makes an action criminal, which was innocent when done before passage of the law. See De Cordova v. City of Galveston, 4 Tex. 470, 473 (1849). In Texas, both ex post facto and retroactive laws are unconstitutional. Tex. Const. art. I, § 16. Although Shoemaker incorrectly labels the statute as an unconstitutional ex post facto law, as no formerly innocent action was made criminal in this case, we will consider the argument that the statute is unconstitutionally retroactive.
If a retroactivity problem exists, it could be said to exist in the statutory changes made from 1991 to 1993. The 1993 amendment, which raises the statutory interest rate from ten percent to twelve percent, "reaches back" and applies to arrears due and owing on September 1, 1991. Act of May 15, 1993, 73rd Leg., ch. 150, 1993 Tex. Sess. Law Serv. 304 (Vernon) (amended 1999) (current version at Tex. Fam. Code Ann. § 157.265 (Vernon Supp. 2002)).
The problem of retroactive statutes was recently addressed in Ex Parte Kubas, 83 S.W.3d 366, 369-71 (Tex.App.-Corpus Christi 2002, pet. ref'd.). After reviewing Texas precedents in that opinion, we held that procedural or remedial laws that do not disturb vested rights can apply retroactively. See id. at 369; see also Ex Parte Abell, 613 S.W.2d 255, 260 (Tex.1981); Grimes v. State, 807 S.W.2d 582, 587 (Tex. Crim.App.1991); Sims v. Adoption Alliance, 922 S.W.2d 213, 216 (Tex.App.-San Antonio 1996, writ denied); Rey v. Acosta, *630 860 S.W.2d 654, 657 (Tex.App.-El Paso 1993, no writ).
The statute in question here sets up procedural guidelines that dictate the rate and manner in which interest applies to child support arrearages. See Act of May 15, 1993, 73rd Leg., ch. 150, 1993 Tex. Sess. Law Serv. 304 (Vernon) (amended 1999) (current version at Tex. Fam. Code Ann. § 157.265 (Vernon Supp.2002)). In addition, the statute involves no vested right of the parent who fails to pay child support; rather, the statute concerns the duty of a parent to support his child[6] and the consequences of failing to do so.[7] As such, assuming the statute is retroactive, it is not unconstitutional. Moreover, evidence showing the application of prejudgment interest to child support arrears accruing prior to the enactment of the 1991 statute demonstrates that the law is not retroactive because the statute merely codified a principle already existent in the common law. In particular, appellant cites Castle, where we stated:
Prior to the enactment of former section 14.34 of the Family Code [now sections 157.265 and 157.267], Texas common law favored the award of prejudgment interest on awards for delinquent child support. Medrano v. Medrano, 810 S.W.2d 426, 428 (Tex.App.-San Antonio 1991, no writ); see also Saums v. Synoground, 605 S.W.2d 373, 375 (Tex.Civ.App.-El Paso 1980, no writ). The rationale for this view is that prejudgment interest is, generally, recoverable as a matter of right where an ascertainable sum of money is determined to have been due and payable at a date certain prior to judgment. Medrano, 810 S.W.2d at 428.... The 1991 enactment of section 14.34 codified the foregoing principle.
Castle, 960 S.W.2d at 143-44.
Given that the statute is not unconstitutionally retroactive and our conclusion that the State has passed the legal sufficiency test, it is now necessary to address some additional arguments proffered by Shoemaker. First, Shoemaker argues that the State waived the right to appeal because although Sammons appealed the master's finding, the State did not. We disagree. Section 201.016 of the family code states, "[f]ailure to appeal to the referring court, by waiver or otherwise, the approval by the referring court of an associate judge's report does not deprive a party of the right to appeal to or request other relief from a court of appeals or the supreme court." Tex. Fam. Code Ann. § 201.016 (Vernon 1996); see In the Interest of S.G.S., 53 S.W.3d 848, 852 (Tex.App.-Fort Worth 2001, no pet.). We hold that the State did not waive the right to appeal by failing to appeal the Master's findings.
Due to this conclusion, the flaws in Sammons's appeal of the Master's recommendations to the trial court alleged by Shoemaker, regarding timeliness and specificity, have no effect on the State's *631 appeal to this Court.[8] Moreover, Shoemaker offers no evidence on how flaws in Sammons's appeal of the Master's recommendation bar the State's appeal to this Court.
Finally, Shoemaker argues that the State cannot challenge the judgment on evidentiary grounds because the State prepared and submitted the judgment which the trial court ultimately signed. Shoemaker characterizes the judgment as having been prepared by the State without limitation or reservation. Shoemaker contends that a motion for judgment is an affirmation by the moving party that the evidence supports the judgment,[9] and that where a litigant moves a trial court to enter a certain judgment, and the trial court subsequently enters the judgment, the litigant cannot later dispute it.[10] However, the record reflects that the trial court instructed the State to prepare and submit the order omitting interest on arrears accumulated prior to September 1, 1991. Moreover, at the de novo hearing, the State contended that the Master's arrearage finding was too low. Also, the order that the State prepared, and that all the parties signed, recites that Sammons "agreed to the entry of these orders as evidenced by her signature; except for those matters being appealed." (emphasis added). These facts demonstrate that the State disagreed with the amount of the judgment, but prepared the judgment calculating arrearage without adding interest to whatever arrears existed on September 1, 1991 because the trial court so ordered.[11] Accordingly, the State did not waive its right to appeal on evidentiary grounds by preparing the adverse order.
We reverse and remand for proceedings consistent with this opinion.
NOTES
[1] The $520 was reduced to a judgment.
[2] We disagree with Shoemaker's contention that the State asserted a legal sufficiency challenge to the calculation of arrears awarded by the trial court. Shoemaker's argument that the State's acknowledgment of its miscalculation of arrearages defeats its legal sufficiency challenge because the State offered no additional evidence demonstrating a result different from that made by the finder of fact is without merit. The State's argument rests on the contention that the trial court erred in its interpretation of the statute, not that it erred in calculating the amount of arrearage due.
[3] See Act of May 15, 1993, 73rd Leg., ch. 150, 1993 Tex. Sess. Law Serv. 304 (Vernon) (amended 1999) (current version at Tex. Fam. Code Ann. § 157.265 (Vernon Supp.2002)). Because the statute provides "judgments rendered prior to the effective date of this Act in accordance with Section 14.41, Family Code, shall bear interest at the rate specified in the applicable law in effect prior to the effective date of this act, and that law is continued in effect only for this purpose," the judgment rendered in 1984 in the amount of $520 should be subtracted from the total arrears owed on September 1, 1991, and interest should accumulate at the rate of 10 percent interest a year computed monthly per the 1991 interest statute.
[4] Without addressing the validity of the State's calculations, the record reflects that the calculations included the application of interest to arrearages due and owing after September 1, 1991.
[5] As such, Shoemaker's argument that the document is supported by no explanation, authentication, or other assistance to the trier of fact, and that deciphering the document to calculate arrears would require the impermissible stacking of multiple inferences lacking in the record, is without merit.
[6] Tex. Fam. Code Ann. § 151.001(a)(3) (Vernon Supp.2002).
[7] See Tex. Fam. Code Ann. §§ 157.261, 157.267 (Vernon 1996 and Supp.2002); see also Harrison v. Cox, 524 S.W.2d 387, 391-92 (Tex.Civ. App.-Fort Worth 1975, writ ref'd n.r.e.) (holding that the section of the family code which provides for the means of enforcement of the child support obligation was not unconstitutionally retroactive because remedial law is the legal machinery by which the substantive law is made effective and the substantive law in that case was the duty of the parent to support his or her minor children); Gastring v. Sovereign Camp, W.O.W., 278 S.W. 310, 312 (Tex.Civ.App.-San Antonio 1925, no writ) (noting that a law was not unconstitutionally retroactive because it was passed "not to infringe or weaken any rights, but to protect those who would be deprived of their rights by naked technicalities based upon no equitable or just principles").
[8] The timeliness and specificity requirements are set out in Tex. Fam. Code Ann. § 201.015(a), (b) (Vernon Supp.2002).
[9] See Litton Indus. Prods., Inc. v. Gammage, 668 S.W.2d 319, 321-22 (Tex.1984).
[10] See Casu v. Marathon Ref. Co., 896 S.W.2d 388, 389 (Tex.App.-Houston [1st Dist.] 1995, writ denied).
[11] Appellee also argues that because the State signed the order under the heading "Approved" that the order represents an agreement between the parties as to the contents of the order. We find no other indications that an agreement existed between the parties. This Court has held that a signature of a party on an order under the heading "Approved as to Substance and to Form," standing alone, does not make the order a consent judgment waiving the signatory party's right to appeal. First Am. Title Ins. Co. v. Adams, 829 S.W.2d 356, 364 (Tex.App.-Corpus Christi 1992, writ denied) (requiring other unequivocal indications in the record that an agreement existed). The situation in the instant case is sufficiently similar such that the State did not waive its right to appeal by signing the order under the heading "Approved."