

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-15-00044-CV

IN THE INTEREST OF M.C. AND
A.C., MINOR CHILDREN

----------

FROM THE 233RD DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 233-092116-86

----------

## MEMORANDUM OPINION[1]

----------

### I. Introduction

In four points, appellant R.C. appeals the trial court's judgment for appellee

S.G.  We affirm in part and reverse and render in part.

---

[1]*See* Tex. R. App. P. 47.4.

## II. Factual and Procedural Background

Twenty-seven years after the parties' 1986 divorce, and over a decade after the parties' youngest child, A.C., turned eighteen, S.G. instituted this action in the trial court to collect $139,976.43 in past-due child support.[2]  During the intervening years, S.G. made no attempt, either on her own or through the Attorney General of Texas, to collect any past due child support, even though the court-ordered payments had ceased decades earlier.  At the time this action commenced, R.C. was employed as a laborer for the Nueces County Water Department, digging up and replacing broken water lines and receiving net earnings of $2,450.12 per month.

After R.C. failed to respond to S.G.'s application within the statutory time period, *see* Tex. Fam. Code Ann. § 158.307 (West 2014), the trial court granted S.G.'s application and adjudicated the amount of child support arrearage to be $139,976.43 as of July 16, 2013.  That order was set aside, however, when the trial court granted R.C.'s motion for new trial, which was filed twenty-seven days after the court's order was signed.[3]

In S.G.'s supplemental response to the suit to challenge and correct the child support arrearages and request for affirmative relief, S.G. asserted that in

---

[2]The parties' oldest child, M.C., was 35 years old at the time S.G. instituted the action.

[3]Prior to filing his motion for new trial and on the same day that the trial court signed the order granting S.G.'s application, R.C. filed a suit to challenge and correct child support arrearages.

2

the parties' 1986 divorce decree, R.C. had been ordered to pay $65 per week in child support through the Tarrant County Child Support Registry, to begin on June 6, 1986.  She attached the divorce decree to her supplemental response and incorporated it by reference.  S.G. also attached and incorporated by reference a record of child support payments maintained by the Tarrant County Child Support Registry showing that from June 19, 1986 to July 30, 1990, R.C. had made payments totaling $11,886.40.  And she attached and incorporated by reference what she referred to as "a complete payment record," detailing a payment history through February 11, 2014, including payment due dates, actual payments, and interest calculations.  The interest calculations were segregated into three distinct time periods and set forth as follows:  June 6, 1986–August 27, 1993, calculated using a 10% annual interest rate and denoting a "Rate Change" on September 1, 1991; September 3, 1993–December 28, 2001, calculated using a 12% annual interest rate; and January 1, 2002–September 13, 2002, calculated using a 6% annual interest rate.  At the end of each of the three portions of the exhibit—identified by interest rate—S.G. set out an amortization schedule showing annual totals of the amount of child support due, the payments actually made, interest and principal, and the balance due, including a final total balance of $142,832.93 ($82,747.80 in child support arrearages and $60,085.13 in interest) as of February 11, 2014.

At the hearing on S.G.'s supplemental response, R.C. objected to S.G.'s Exhibit 5, the same payment record described above, and to S.G.'s Exhibit 7,

3

which was a payment record through November 3, 2014, showing a balance of $146,437.56 ($82,747.80 in child support arrearages and $63,689.76 in interest). The trial court overruled his challenges and admitted these two exhibits.

R.C. then offered, and the trial court admitted, R.C.'s Exhibit 2, a certified copy of the Tarrant County Child Support Office's record showing that he owed $104,862.27 in cumulative arrearages through October 31, 2014 ($55,250 in child support arrearages and $61,982.07 in accrued interest), and showing the applicable interest rate from June 6, 1986 to December 31, 2001 at 12% and from January 1, 2002 to September 16, 2002 at 6%. Exhibit 2 also included a $483.40 payment made on October 17, 2013, which was not reflected in either of S.G.'s exhibits. R.C. testified that he agreed with the Tarrant County Child Support Office's record of the arrearages as reflected in his Exhibit 2 and that he owed "a little over" $104,000 minus "any kind of possession credit . . . and direct payments."[4] R.C. also testified that he should not be responsible for S.G.'s attorney's fees prior to the grant of the new trial and requested that the trial court

---

[4]R.C. claimed that he had made some direct payments to S.G. that were not accounted for, but his only evidence was a copy of a $300 check that his wife wrote to S.G. for "[A.C.] school" when A.C. was already eighteen years old. R.C. also stated that he sought possession credit for the time M.C. lived with him, but M.C. was already eighteen during that time. The divorce decree provided for R.C. to make weekly child support payments "until the children attain the age of eighteen (18) years or are otherwise emancipated." M.C. turned eighteen years old in 1996 and A.C. turned eighteen years old in 2002. S.G. testified that she had never seen any direct payments from R.C.

4

set a structured payout schedule on the arrearages. The trial court sustained S.G.'s objection to the payout schedule request.

At the conclusion of the hearing, R.C.'s position was basically two-fold: that the amount S.G. sought, at around $40,000 over the Tarrant County amount, was unfair, and that given his age and financial circumstances, the trial court should not garnish 50% of his income. Additionally, R.C. offered $97,000 to satisfy the arrearage, stating that he and his wife would take out a home equity loan on her property as a down payment and then pay the rest in monthly installments for ten years.[5]

On November 10, 2014, the trial court signed a judgment for S.G. in the amount of $146,437.56, plus interest, in addition to attorney's fees and court costs, payable through a judicial writ of withholding.

### III. Discussion

In his first point, R.C. claims that the trial court based its $146,437.56 award of past-due child support on an "in-house" calculation of child support arrearages and interest prepared by S.G.'s attorney without receiving any evidence of the basis and reliability of the $146,437.56 figure. In his second point, he challenges the legal and factual sufficiency of the evidence to support the trial court's arrearages determination. Assuming without deciding that S.G.'s

---

[5]S.G. testified that R.C.'s proposal was unacceptable.

exhibits were properly admitted, based on our analysis below, we conclude that R.C.'s sufficiency challenge has merit.

## A. Standard of Review

Most appealable issues in family law cases are evaluated for an abuse of discretion. *Herzfeld v. Herzfeld*, No. 05-10-01298-CV, 2012 WL 6061772, at *2 (Tex. App.—Dallas Dec. 6, 2012, no pet.) (mem. op.). A trial court abuses its discretion if the court acts without reference to any guiding rules or principles, that is, if the act is arbitrary or unreasonable. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007); *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004). A trial court also abuses its discretion by ruling without supporting evidence. *Ford Motor Co. v. Garcia*, 363 S.W.3d 573, 578 (Tex. 2012). A trial court also abuses its discretion if it fails to analyze the law correctly or misapplies the law to established facts. *Iliff v. Iliff*, 339 S.W.3d 74, 78 (Tex. 2011).

In family law cases, the abuse of discretion standard of review overlaps with the traditional sufficiency standard of review; as a result, legal and factual sufficiency are not independent grounds of error but are relevant factors in our assessment of whether the trial court abused its discretion. *Herzfeld*, 2012 WL 6061772, at *2. To determine whether the trial court abused its discretion because the evidence is insufficient to support its decision, we consider whether the trial court (1) had sufficient evidence upon which to exercise its discretion and (2) erred in its exercise of that discretion. *Id.* We conduct the applicable sufficiency review with regard to the first question. *Id.* We then determine

6

whether, based on the elicited evidence, the trial court made a reasonable decision. *Id.*

Regarding sufficiency of the evidence, we may sustain a legal sufficiency challenge only when (1) the record discloses a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence establishes conclusively the opposite of a vital fact. *Ford Motor Co. v. Castillo*, 444 S.W.3d 616, 620 (Tex. 2014) (op. on reh'g); *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998), *cert. denied*, 526 U.S. 1040 (1999). In determining whether there is legally sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable factfinder could and disregard evidence contrary to the finding unless a reasonable factfinder could not. *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex. 2005).

When reviewing an assertion that the evidence is factually insufficient to support a finding, we set aside the finding only if, after considering and weighing all of the evidence in the record pertinent to that finding, we determine that the credible evidence supporting the finding is so weak, or so contrary to the overwhelming weight of all the evidence, that the answer should be set aside and a new trial ordered. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986)

7

(op. on reh'g); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965).

## B. Applicable Law on Child Support Interest

Family code section 157.265 governs accrual of interest on child support. Tex. Fam. Code Ann. § 157.265 (West 2014). A trial court has no discretion to modify interest on child support arrearages, and in determining the amount of accrued interest, the court acts as a "mere scrivener" with no discretion to deviate from the family code's dictates. *Herzfeld*, 2012 WL 6061772, at *3.

Section 157.265 has been frequently amended since its inception in 1991,[6] but it currently provides:

> (a) Interest accrues on the portion of delinquent child support that is greater than the amount of the monthly periodic support obligation at the rate of six percent simple interest per year from the date the support is delinquent until the date the support is paid or the arrearages are confirmed and reduced to money judgment.

> (b) Interest accrues on child support arrearages that have been confirmed and reduced to money judgment as provided in this subchapter at the rate of six percent simple interest per year from the date the order is rendered until the date the judgment is paid.

> (c) Interest accrues on a money judgment for retroactive or lump-sum child support at the annual rate of six percent simple

---

[6]*See* Act of May 23, 1991, 72nd Leg., R.S., ch. 467, §§ 1, 6, 1991 Tex. Gen. Laws 1693, 1693, 1695, *amended by* Act of May 6, 1993, 73rd Leg., R.S., ch. 150, §§ 1, 3, 1993 Tex. Gen. Laws 302, 302, *amended by* Act of May 24, 1999, 76th Leg., R.S., ch. 943, §§ 1, 3, 1999 Tex. Gen. Laws 3679, 3679, *amended by* Act of May 25, 2001, 77th Leg., R.S., ch. 1491, §§ 1, 3, 2001 Tex. Gen. Laws 5294, 5294–95, *amended by* Act of May 12, 2005, 79th Leg., R.S., ch. 185, §§ 1–2, 2005 Tex. Gen. Laws 339, 339 (current version at Tex. Fam. Code Ann. § 157.265).

interest from the date the order is rendered until the judgment is paid.

  (d) *Subsection (a) applies to a child support payment that becomes due on or after January 1, 2002*.

  (e) *Child support arrearages in existence on January 1, 2002, that were not confirmed and reduced to a money judgment on or before that date accrue interest as follows*:

    (1) *before January 1, 2002, the arrearages are subject to the interest rate that applied to the arrearages before that date*; and

    (2) *on and after January 1, 2002, the cumulative total of arrearages and interest accumulated on those arrearages described by Subdivision (1) is subject to Subsection (a)*.

  (f) Subsections (b) and (c) apply to a money judgment for child support rendered on or after January 1, 2002. A money judgment for child support rendered before that date is governed by the law in effect on the date the judgment was rendered, and the former law is continued in effect for that purpose.

Tex. Fam. Code Ann. § 157.265 (emphasis added); *see also In re M.C.C.*, 187 S.W.3d 383, 385 (Tex. 2006) (holding that the 2001 amendment did not indicate legislative intent to make it retroactive; as of January 1, 2002, unpaid child support that had not been judicially confirmed, including the 12% interest already included in the debt, would start accruing any new interest at the rate of 6%).

Before September 1, 1991, Texas common law favored the award of prejudgment interest for delinquent child support based on the reasoning that an ascertainable sum of money could be determined to have been due and payable at a date certain prior to judgment. *Castle v. Harris*, 960 S.W.2d 140, 143–44 (Tex. App.—Corpus Christi 1997, no writ). As observed in O'Connor's Family

9

Law Handbook, "It is unclear, however, whether the interest that accrues on unconfirmed child support during this period should be characterized as prejudgment or postjudgment interest." Joan Foote Jenkins & Randall B. Wilhite, *O'Connor's Texas Family Law Handbook* 1102, 1103–04 (2015) (noting that the applicable interest rate during this time period, if characterized as common law prejudgment interest, would be governed by a variety of rules, including those governing compounding versus simple interest, and if characterized as postjudgment interest, would be governed by the revised civil statute article and interpretive case law in effect at the time).

On September 1, 1991, the legislature added section 157.265's predecessor, providing for prejudgment interest to accrue on unpaid child support obligations "at the rate of ten percent a year computed *monthly*." Act of May 23, 1991, 72nd Leg., R.S., ch. 467, §§ 1, 6, 1991 Tex. Gen. Laws 1693, 1693, 1695 (emphasis added); *Castle*, 960 S.W.2d at 142, 144. But a subsequent amendment, effective September 1, 1993, changed the rate to 12% simple interest *per year*.[7] Act of May 6, 1993, 73rd Leg., R.S., ch. 150, §§ 1, 3, 1993 Tex. Gen. Laws at 302; *Castle*, 960 S.W.2d at 142–43. "The 1993 amendment,

---

[7]The 1993 amendment also deleted the word "prejudgment," added "delinquent," and provided that the interest would accrue from the date the support was delinquent until the date it was paid, regardless of whether the amount had been reduced to judgment by the court. Act of May 6, 1993, 73rd Leg., R.S., ch. 150, § 1, sec. 14.34(a), 1993 Tex. Gen. Laws at 302. As pertinent here, it defined "delinquent" payment as "if the payment is not received by the obligee, registry, or entity specified in the child support order before the 31st day after the payment date stated in the order." *Id.* § 1, sec. 14.34(b).

which raise[d] the statutory interest rate from ten percent to twelve percent, 'reache[d] back' and applie[d] to arrears due and owing on September 1, 1991." *In re W.G.S.*, 107 S.W.3d 624, 629 (Tex. App.—Corpus Christi 2002, no pet.). That is, the statute as enacted and made effective on September 1, 1993, stated:

> This Act applies to child support payments *due on or after September 1, 1991, and any accrued arrears which were owing on or after September 1, 1991*, in:
>
> > (1) an action commenced on or after the effective date of this Act; or
>
> > (2) a new trial or retrial following appeal of the trial court's judgment in an action commenced before the effective date of this Act.

Act of May 6, 1993, 73rd Leg., R.S., ch. 150, §§ 1, 3(b), 1993 Tex. Gen. Laws at 302 (emphasis added). Therefore, as of September 1, 1993, the interest rate for delinquent child support from September 1, 1991 until December 31, 2001, was 12% per year. *See* Act of May 6, 1993, 73rd Leg., R.S., ch. 150, §§ 1, 3(b), 1993 Tex. Gen. Laws at 302; Jenkins & Wilhite, *O'Connor's Texas Family Law Handbook* at 1104.

In 1999, the legislature modified when interest would begin to accrue on the portion of delinquent child support "that is greater than the amount of the monthly periodic support obligation" at 12% simple interest per year. Act of May 24, 1999, 76th Leg., R.S., ch. 943, § 1, 1999 Tex. Gen. Laws at 3679. In 2001, the legislature amended the statute to reflect a 6% simple interest rate per year.

11

Act of May 25, 2001, 77th Leg., R.S., ch. 1491, §§ 1, 3, 2001 Tex. Gen. Laws at 5294–95.[8]

The legislature amended the statute again in 2005 to add subsections (d) through (f) and to address the split in the courts regarding whether the 2001 interest rate change from 12% to 6% was to apply only prospectively or also retroactively. *See* Act of May 12, 2005, 79th Leg., R.S., ch. 185, §§ 1–2, 2005 Tex. Gen. Laws at 339; House Comm. on Jurisprudence, Bill Analysis, Tex. H.B.

---

[8]In contrast to the 1993 amendment, in *M.C.C.*, the supreme court concluded that the 2001 amendment was to be prospectively applied only, because the effective date language "merely state[d] the amending date and then define[d] the types of support to which the new six percent rate applie[d] without any suggestion of retroactive application." 187 S.W.3d at 384–85 (quoting government code section 311.022 for the proposition that a statute is presumed to be prospective in its operation unless expressly made retroactive and stating that statutes are only applied retroactively if the statutory language indicates that the legislature intended that the statute be retroactive). The 2001 amendment stated:

> The change in law made by this Act applies only to:
>
> (1) a child support payment that becomes due on or after the effective date of this Act; and
>
> (2) unpaid child support that became due before the effective date of this Act and for which a court has not confirmed the amount of arrearages and rendered a money judgment.

Act of May 25, 2001, 77th Leg., R.S., ch. 1491, § 3, 2001 Tex. Gen. Laws at 5295. This was unlike the language in the 1993 amendment, which expressly reached backward by two years in setting out the circumstances to which the law applied. *See* Act of May 6, 1993, 73rd Leg., R.S., ch. 150, §§ 1, 3(b), 1993 Tex. Gen. Laws at 302; *W.G.S.*, 107 S.W.3d at 629–30 (observing that procedural or remedial laws that do not disturb vested rights can apply retroactively and that applying statute to a parent who failed to pay child support involved no vested right).

678, 79th Leg., R.S. (2005), *available at* http://www.lrl.state.tx.us/scanned/srcBillAnalyses/79-0/HB678.pdf (last visited May 6, 2016). House Bill 678 "clarifie[d] the application of the effective date of th[e] amendment by providing that any unpaid child support that accrued before January 1, 2002, accrued at the interest rate in effect at the time the child support payment became delinquent." House Comm. on Jurisprudence, Bill Analysis, Tex. H.B. 678, 79th Leg., R.S. (2005). Therefore, all of the arrearages from January 1, 2002 onward and the interest accumulated on the cumulative total should have been calculated using the 6% annual interest rate, while the arrearages and interest accruing before January 1, 2002 were subject to section 157.265's predecessors. *See id.*

## C. Evidence

In addition to the payment records at issue in S.G.'s Exhibits 5 and 7, the trial court heard testimony from R.C. that the Tarrant County payment history contained all of the child support payments that he had made and his admission that he owed unpaid child support and arrearages in the amount of "a little over" $104,000 as reflected on the Tarrant County Child Support Office's records. The trial court also heard testimony from S.G. that she stopped receiving child support payments approximately four years after the divorce and had received no direct payments. Based on the children's ages at the time of the divorce in June 1986, R.C. was obligated to make approximately 16 years of child support payments, ending in September 2002 (over 832 payments of $65 each, totaling

13

more than $50,000 before interest) but according to his exhibit from Tarrant County, he paid only $12,369.80.  Based on the evidence provided, and viewed in its most favorable light, the trial court could have reasonably concluded that R.C. owed unpaid child support and interest, and that the amount he owed was at least the amount reflected in the Tarrant County record and to which he stipulated: $104,862.27.

However, although S.G.'s exhibits show that the interest rate changed to 10% on September 1, 1991, they are silent as to what rate, if any, applied prior to September 1, 1991.[9]  *Cf.* Act of May 23, 1991, 72nd Leg., R.S., ch. 467, §§ 1, 6, 1991 Tex. Gen. Laws at 1695 (stating that the Act took effect on September 1, 1991, and applied to child support due and owing after the statute's effective date); *Castle*, 960 S.W.2d at 143–44 (stating that before September 1, 1991, Texas common law favored the award of prejudgment interest for delinquent child support payments).

Further, the portion of S.G.'s exhibits referencing the June 6, 1986 to August 27, 1993 time period merely states at the top of the first page, "Nominal Annual Rate . . . :    10.000%," even though, as set out above, the 1993 amendment to the statute "reache[d] back" and applied a 12% simple interest rate *per year* to arrears due and owing on September 1, 1991, in addition to

---

[9]R.C. stopped making regular child support payments in 1986, the first year that the order went into effect.

changing the rate from a monthly calculation.[10]  *See W.G.S.*, 107 S.W.3d at 629; Jenkins & Wilhite, *O'Connor's Texas Family Law Handbook* at 1104.  Nothing in S.G.'s exhibits reflects either change.  Instead, the top of the second portion of S.G.'s exhibits, reflecting the date range September 3, 1993 to December 31, 2001, states, "Nominal Annual Rate . . . :    12.000%," ignoring the statutory requirement of application from September 1, 1991.

Further, S.G.'s exhibits do not show the actual calculations used, making it impossible for this court to determine how the numbers provided in the exhibits were calculated, including the $40,000 difference between S.G.'s exhibits and R.C.'s exhibit.  *See Chenault v. Banks*, 296 S.W.3d 186, 192 (Tex. App.— Houston [14th Dist.] 2009, no pet.) ("Simply put, we cannot find any way, based on the evidence presented, to support the trial court's child support arrearages calculation.").  Although R.C. offered no evidence beyond the interest rates stated in his exhibit to controvert the interest rates recited in S.G.'s exhibits, R.C. did not bear the burden of proof on this point.  Consequently, because S.G. failed to show the correct interest rate as applied, her exhibits were legally and factually insufficient to support the trial court's award beyond $104,862.27, the amount to which R.C. stipulated.  Because the trial court lacked sufficient

---

[10]In contrast, R.C.'s copy of the Tarrant County record shows a 12% interest rate from June 6, 1986 to December 31, 2001, but it also fails to show any interest calculations used in reaching the $104,862.27 figure.

evidence upon which to exercise its discretion, we sustain part of R.C.'s second point and render judgment for S.G. in the amount of $104,862.27.

## D. Attorney's Fees

In his third point, R.C. argues that the trial court abused its discretion by awarding attorney's fees that were incurred in securing S.G.'s default judgment, which was later set aside by the granting of his motion for new trial. Without citation to authority, R.C. asserts that "[t]he granting of the Motion for New Trial should have legally voided all the legal work performed in securing the default judgment."[11] *See* Tex. R. App. P. 38.1(i).

---

[11]S.G. responds that the award of attorney's fees was mandatory under section 157.167(a). Family code section 157.167(a) provides, "If the court finds that the respondent has failed to make child support payments, the court shall order the respondent to pay the movant's reasonable attorney's fees and all court costs in addition to the arrearages." Tex. Fam. Code Ann. § 157.167(a) (West 2014). When the trial court finds in a child-support enforcement action that the obligor has failed to make child support payments, it has no discretion but to order the obligor to pay the obligee's reasonable attorney's fees unless it also finds that there is good cause for the failure to pay. *See id.* § 157.167(c); *Remley v. Remley*, No. 02-07-00044-CV, 2008 WL 4355347, at *9 (Tex. App.—Fort Worth Sept. 25, 2008, no pet.) (mem. op.).

Further, R.C.'s argument that the granting of a new trial "legally voided all the legal work performed in securing the default judgment" is simply not a correct statement of the law. *See Dir., State Employees Workers' Compensation Div. v. Evans*, 889 S.W.2d 266, 270 n.3 (Tex. 1994) (stating that the willingness of a party to go to trial immediately and pay the expenses of the default judgment are important factors for the court to look to in determining whether it should grant a new trial); *Sw. Warren, Inc. v. Crawford*, 464 S.W.3d 822, 831 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (stating that appellants' offer to reimburse appellee for the attorney's fees she incurred in obtaining her default judgment was sufficient to rebut appellee's claim of financial hardship); *see also L'Arte de la Mode, Inc. v. The Neiman Marcus Grp.*, 395 S.W.3d 291, 298 (Tex. App.—Dallas 2013, no pet.) ("The trial court may not deny the motion for new trial based

16

On September 24, 2013, R.C. filed a motion for new trial, seeking to set aside the default judgment that had been entered against him on August 28, 2013. R.C.'s motion met the *Craddock*[12] test in that it: (1) alleged that he had used diligence and that his failure to answer was the result of a mistake, not conscious indifference, (2) alleged that he had meritorious defenses, and (3) alleged that the setting aside of the default judgment would not prejudice S.G. *See Dolgencorp of Tex., Inc. v. Lerma*, 288 S.W.3d 922, 925 (Tex. 2009) (reciting *Craddock* test's three elements); *In re B.Q.S.*, No. 11-13-00043-CV, 2014 WL 2957451, at *8–11 (Tex. App.—Eastland June 26, 2014, no pet.) (mem. op.) (applying *Craddock* when trial court entered a default order of parentage and ordered appellant to pay child support and retroactive child support).

In addressing the third prong of the *Craddock* test, R.C.'s motion stated, "[R.C.] stands ready to pay any costs associated with the taking of the default judgment." Having agreed to pay costs associated with the taking of the default judgment, R.C. cannot now complain on appeal that the reasonable and necessary attorney's fees associated with the taking of the default judgment should not have been included in the judgment.[13] *See Johnson v. Harris Cty.*,

---

solely on the plaintiff's unsupported allegations that the defendant will not keep its promise to pay the plaintiff's costs and expenses in obtaining the default judgment.").

[12] *Craddock v. Sunshine Bus Lines, Inc.*, 133 S.W.2d 124, 126 (Tex. 1939).

[13] R.C. claimed in his motion for new trial that he received no notice of the application for judicial writ of withholding but also stated that "[u]pon receipt of the

17

No. 01-14-00383-CV, 2015 WL 3485913, at \*2 (Tex. App.—Houston [1st Dist.] June 2, 2015, pet. denied) (mem. op.) (holding that a party cannot complain on appeal that the trial court ordered the action that the party requested). We overrule R.C.'s third point.

## E. Payout Schedule

In his final point, R.C. argues that the trial court should have used its equity powers to establish a payout schedule on the arrearage judgment because after it entered judgment, S.G. issued a wage assignment "[a]t the first opportunity" to garnish more than his net monthly salary. However, in cases in which a trial court has created a payout schedule, the payout schedule's presence cannot prevent execution on a judgment for arrearages—it merely gives the obligee an additional permissible option for collecting what he or she is entitled to receive

Notice of Application of Judicial Writ of Withholding," he called S.G.'s attorney and voiced his objection, then hired an attorney in Corpus Christi who failed to file an answer or contest the pending court action. R.C. then hired his instant counsel to assist him. R.C. asserted in his motion for new trial, "The failure of the Respondent to file a contest before judgment was a mistake or accident caused by his failure to receive the proper information from the Petitioner's attorney *and* coordination problems between attorneys." [Emphasis added.] S.G. filed a response to the motion, claiming that R.C. was properly served with the notice of application for judicial writ of withholding, and she attached an affidavit by the law firm employee who prepared the notice of application for judicial writ of withholding and a green card to show receipt of the notice. S.G. stated in her response that she had had to hire a lawyer to represent her and prayed for her "reasonable attorney's fees for this case." At the November 2014 hearing, when R.C.'s attorney stated that the trial court had ruled that S.G.'s lawyer "did these things without proper notice to them," the trial court responded, "Well, the Court found no such thing, but—the Court just set aside a default judgment. That's all the Court did. . . . [Y]ou're attributing findings to this Court this Court never made."

18

under the judgment. *In re R.C.T.*, 294 S.W.3d 238, 243 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (op. on reh'g) ("The existence of a payout schedule does not preclude Lynn (or the Attorney General) from utilizing any available collection efforts, such as a child-support lien."); *In re Dryden*, 52 S.W.3d 257, 262–63 (Tex. App.—Corpus Christi 2001, orig. proceeding) (granting relief when trial court did not have authority to preclude relator from attempting to collect judgment for arrearages by method other than payout schedule). Therefore, even if the trial court abused its discretion by not establishing a payout schedule, neither its presence nor absence could have an effect on *S.G.*'s decision to pursue any of the collection options available to her.[14]

We overrule R.C.'s final point.

---

[14]Further, family code section 158.007 addresses the limited basis available to the trial court to create a payout schedule, stating that if the court "finds that the schedule for discharging arrearages would cause the obligor, the obligor's family, or children for whom support is due from the obligor to suffer unreasonable hardship, the court . . . may extend the payment period for a reasonable length of time." Tex. Fam. Code Ann. § 158.007 (West 2014); *see In re D.C.*, 180 S.W.3d 647, 653 (Tex. App.—Waco 2005, no pet.) (reversing trial court's judgment when record did not provide adequate factual basis to support trial court's implied finding of "unreasonable hardship" and decision to allow father to pay off his arrearages over a period of more than two years). The trial court here implicitly found that its order without a payout schedule would not work an unreasonable hardship, and as it was the sole judge of the witnesses' credibility and the weight to be given their testimony, *see Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003), we cannot say that it abused its discretion merely because we might have ruled differently in the same circumstances. *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995); *see also Low v. Henry*, 221 S.W.3d 609, 620 (Tex. 2007). R.C. acknowledges that he "cannot cite any existing case law" to support the proposition that the trial court abuses its discretion by granting to a petitioner the automatic remedies available under the family code when an arrearage is

## IV. Conclusion

Having overruled R.C.'s third and fourth points, we affirm the portion of the trial court's judgment pertaining to S.G.'s attorney's fees billed in connection with the default judgment and the payout schedule. But having sustained part of R.C.'s second point based on the legal and factual insufficiency of the evidence to support more than the amount to which R.C. stipulated, we reverse the amount of child support arrearages stated in the trial court's judgment and render judgment for S.G. in the amount to which R.C. stipulated, $104,862.27.

/s/ Bonnie Sudderth
BONNIE SUDDERTH
JUSTICE

PANEL: WALKER, MEIER, and SUDDERTH, JJ.

DELIVERED: May 12, 2016

---

reduced to judgment. *See, e.g.*, Tex. Fam. Code Ann. § 157.323 (West 2014) (setting out automatic remedies in foreclosure of child support liens or suit to determine arrearages); *In re C.D.E.*, No. 14-14-00086-CV, 2015 WL 452195, at *3 (Tex. App.—Houston [14th Dist.] Jan. 27, 2015, no pet.) (noting that section 157.323 "does not provide an option authorizing the trial court to vacate or terminate a lien when arrearages are due and owing").